UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CORY SANFORD, ) <br> ) <br> Defendant. ) | Case No. 16-CR-20082 |

## ORDER

This case is before the court for ruling on the Motion for *Franks* Hearing (#13) filed by Defendant, Cory Sanford. The Government filed a Memorandum in Opposition (#18) and a hearing was held on August 7, 2017. After careful consideration of the arguments of the parties, the documents provided by the parties, and the testimony presented at the hearing, this court concludes that there is no basis for a *Franks* hearing regarding the search warrant issued in this case. Therefore, Defendant's Motion (#13) is DENIED. The Government's Motion to Continue or Cancel *Franks* hearing (#21) is therefore MOOT.

BACKGROUND

On December 6, 2016, Defendant was charged by Indictment (#1) with one count of knowing possession with the intent to distribute a substance containing heroin, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C), one count of knowing possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I), and one count of unlawful possession of a firearm by a felon, in violation

of 18 U.S.C. § 922(g)(1). On December 28, 2016, Elisabeth Pollock of the Federal Defender's Office was appointed to represent him. This case is set for a final pretrial conference on September 11, 2017, at 10:30 a.m., and a jury trial on September 26, 2017, at 9:30 a.m.

## PENDING MOTION

On June 7, 2017, Defendant filed his Motion for *Franks* Hearing (#13) and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant is charged with one count of possession of heroin with the intent to distribute and one count of possession of a firearm in furtherance of a drug trafficking offense. Defendant claims that the evidence relevant to these charges was discovered pursuant to the execution of a search warrant at his residence. The search warrant was issued by Vermilion County Circuit Judge Mark S. Goodwin at approximately 3:50 a.m. on September 27, 2016, and was executed later that same morning. The search warrant was issued based upon the testimony of Danville Police Officer Benjamin Stringer and Jane Doe, a witness who allegedly obtained narcotics from Defendant the evening of September 26, 2016. Defendant stated that Jane Doe's true identity is Ashley Hinkle. Defendant argued that Officer Stringer and Hinkle intentionally misrepresented key facts and omitted other key facts which would have affected the issuance of the search warrant.

Defendant also filed a Memorandum of Law in Support (#14).  Defendant attached a transcript of the testimony of Stringer and Hinkle before Judge Goodwin on September 27, 2016.  Defendant attached Hinkle's Sworn Declaration, which she signed on June 7, 2017.  In the Sworn Declaration, Hinkle stated that her vehicle was pulled over the evening of September 26, 2016.  Officers searched the vehicle and found some syringes and a small amount of methamphetamine.  Hinkle stated that she also had an outstanding warrant for failing to appear in court in a misdemeanor case.  She was taken to the Public Safety Building and was interviewed by Officer Stringer and other officers.  Hinkle stated that she was told that, if she did not cooperate, they would take her one-year-old daughter away from her.  Hinkle stated that she made a statement and was taken to the courthouse to meet with a prosecutor.  The prosecutor and Stringer told her she had to repeat her statement to a judge and also told her to say she had not been promised anything for testifying.  Hinkle stated that she believed she would be charged with possession of drugs and arrested on the outstanding warrant.  When she asked Stringer about that he told her that she would not be charged with any new offenses and the warrant would be taken care of.  Hinkle stated that, when she was finished testifying, Stringer took her back to her car and allowed her to drive it home even though she did not have a valid license.  Hinkle stated that Stringer also returned heroin and syringes to her.  Hinkle stated that, about three weeks later, she was arrested on the outstanding warrant.  She said she was very confused and surprised because she believed it had been taken care of after she testified about Defendant to the judge.

3

Defendant argued that Hinkle's lengthy criminal record and the existence of an active warrant and Stringer's assurances that there would be no new criminal charges and that the pending warrant would be "taken care of" were not disclosed to Judge Goodwin before he decided to issue the warrant. Defendant argued that the issuance of the search warrant rested solely on the credibility of Hinkle's testimony because there was no corroboration of the information she provided. Defendant contended that the omission of the information relevant to Hinkle's credibility would have altered the probable cause determination in this case.

On June 12, 2017, this court held a hearing in this case. The final pretrial conference and trial dates were reset, and the case was set for a hearing on the *Franks* Motion on July 17, 2017.

On July 5, 2017, the Government filed a Response (#18). The Government argued that Defendant has not shown that a *Franks* hearing is necessary. The Government stated that it was unaware of any federal court ever finding a warrant invalid for intentional or reckless omission in the course of live testimony before a magistrate. The Government noted that Stringer and Hinkle subjected themselves to questioning under oath and they did not refuse to answer any questions. The Government argued that there was, in fact, corroboration because Stringer corroborated Hinkle's information that the residence in question had a refrigerator on the front porch. The Government argued that Hinkle's Declaration is contradictory and mostly nonsense, and the wording of the Declaration twists the facts and leaves out details to

4

make it appear as if some misconduct occurred. The Government contended that the omissions alleged by Defendant do not necessitate a *Franks* hearing, noting that the judge issuing the search warrant was aware that informants are frequently facing charges and hoping for deals. The Government argued that the testimony in support of the search warrant was sufficient to support probable cause and the alleged omissions are not material such that they would alter the probable cause determination if included in the testimony. The Government argued that Hinkle's criminal history and other motivations simply are not sufficiently material to the probable cause analysis to warrant a *Franks* hearing because the information Hinkle provided to the judge was detailed, recent, and was given against Hinkle's penal interest while she was under oath.

On July 13, 2017, the Government filed a Motion to Continue or Cancel Hearing (#21). The Government stated that the only evidence Defendant offered in support of his request for a *Franks* hearing was the "Sworn Declaration" of Ashley Hinkle. The Government stated that FBI Special Agents Michael Carter and Andrew Huckstadt met with Hinkle to discuss the circumstances surrounding the so-called "Sworn Declaration." The Government stated that Hinkle told the FBI agents that she did not write or prepare the Declaration and the words were not her own. She told the FBI agents that most of the Declaration after paragraph 3 was false and/or twists the actual circumstances to something essentially untrue. For example, she denied that the officers ever threatened to take her kids away. She also described the issue of the

expected benefits as one of miscommunication, not malice. The Government asked that the Declaration be stricken and that the scheduled hearing be continued, cancelled, or converted to a pre-*Franks* hearing.

On July 17, 2017, the parties appeared before this court. The motion hearing was not held because Hinkle had not been transported for the hearing. The motion hearing was reset to August 7, 2017.

HEARING

Because this court concluded that the credibility of Hinkle could be determinative of the issue of whether Defendant's Motion seeking a *Franks* hearing should be granted, a hearing was held on August 7, 2017. At the hearing, Hinkle testified that she is currently incarcerated in the Fountain County, Indiana, jail for failure to appear. She testified that she was friends with Defendant. Hinkle testified that she spoke with Defendant's attorney on the telephone about the night she testified before the state court judge. She testified that, the next day, an investigator from the attorney's office came to see her and brought a paper for her to sign. She testified that she signed the Declaration after she crossed something out that was not accurate. The Declaration stated that heroin was found in her vehicle, but that was not accurate so she crossed it out. Hinkle testified that, at the time she signed it, she believed everything that was in the Declaration was correct.

Hinkle then testified about the events of September 26, 2016. Hinkle stated that she was at Defendant's house in Danville. After she left, she was pulled over by Officer Stringer. When she got out of the car, Stringer saw a syringe on the seat where she had been sitting. Her car was searched, and methamphetamine and syringes were found in her purse. Hinkle testified that she had heroin in her bra, but that was not discovered during the search. Hinkle testified that she told Stringer that she did not want to be arrested because she had a one-year-old daughter at home. Hinkle said she was taken to the Public Safety Building for an interview. She told Stringer that she had an outstanding warrant and Stringer said he would do his best to get it taken care of. She was interviewed and was later taken to the courthouse to give a statement to the prosecutor and a judge. Hinkle said she asked Stringer what to say if she was asked if she had been promised anything and he told her to say "no." Hinkle testified that it was her impression when she went to the courthouse that she was not getting charged with any of the drugs and the warrant, to the best of her knowledge, would go away.

Hinkle testified that two FBI agents came to talk to her about her Declaration. Hinkle testified that she clarified some of the statements she made in the Declaration. One was the statement in her Declaration that she was told that, if she did not cooperate, they would take her one-year-old daughter away from her. Hinkle said her daughter was in foster care and she had a visit with her daughter the next day. She said she was informed she would not be at the visit if she did not cooperate. She also clarified that it was only Stringer who told her to say she had not been promised

7

anything, not Stringer and the prosecutor. Hinkle testified that she felt she had been guaranteed that she would not be arrested that night and she felt pretty sure she was not going to have a warrant. Hinkle also clarified that the heroin was not returned to her because she still had it. She testified that it was true that she was taken back to her car and given her purse with the syringes in it. Hinkle testified that she was taken to her car to drive home even though she did not have a driver's license. Hinkle also stated that the statement in her Declaration that she was surprised when she was arrested because of the outstanding warrant was true. She testified that she thought she did not have a warrant anymore after she testified before the judge. Hinkle testified that she told Stringer she had used drugs at Defendant's house that night. She said she was not asked about using drugs when she testified before the judge.

During cross-examination, Hinkle testified that she had a drug addiction and had purchased heroin from Defendant for about a year and a half. She testified that, on September 26, 2016, she used drugs at Defendant's residence and saw a big bag of heroin at that time. She also saw a gun and observed Defendant waving that firearm around. She admitted that she knew from her experience with the criminal justice system that, if she did not cooperate that day, she was going to be arrested. She also admitted talking to the FBI agents about whether she would be in danger if the case were to go the opposite way and Defendant were to lose. She admitted being concerned that she could be in some danger because of Defendant. Hinkle also stated that what she told Stringer and the state court judge about the bag of heroin and the

8

gun inside Defendant's residence was true. Hinkle agreed that she told the FBI agents that Stringer told her he would see what he could do about the warrant, but at the time he couldn't make any promises about the warrant. She testified that there were no promises about her warrant right then, but she was still being promised she wouldn't be arrested for the methamphetamine. Hinkle testified that Stringer told her that the judge already signed off on the warrant so that's why he could not make any promises about the warrant. Hinkle agreed that the officers never threatened that they were going to take her daughter away. She stated that they never said it like that, in those words.

Hinkle testified that she had numerous convictions for theft and drug possession beginning in 2009. She testified that she was using heroin every day but was not suffering from withdrawal at the hearing because she has been incarcerated the last four months.

Edwin Lisboa then testified that he works for the Federal Public Defender's Office in Urbana as an investigator. He testified that he met with Hinkle on June 7, 2017, to get her signature on a statement. Lisboa testified that he told Hinkle to read the statement carefully and correct anything that was untrue or inaccurate. He said that she did cross something out and then signed it.

The Government then called Benjamin Stringer to testify, to provide some context. Stringer testified that he did not return the methamphetamine or syringes to Hinkle. He testified that he may have missed a syringe, but he did not willingly give

9

her back any syringes. He stated that, during the traffic stop, Hinkle offered to cooperate pretty much from the outset. Stringer testified that he told her that her cooperation would be taken into consideration and passed along to the state's attorney. Stringer stated that he did not make any promises to her and specifically told her that he could not promise her anything, but her cooperation would be taken into consideration. Stringer testified that he never threatened to take her child away. He stated that Hinkle was nervous and asked what she was supposed to say in front of the judge. He told her to tell the judge what she said in the interview. He also clarified that she had not been promised anything. Stringer testified that he did not try to hide any information from the judge. After the search warrant was executed and Defendant was arrested, Hinkle was allowed to leave and he took her to her car.

Stringer was then subject to cross examination. He admitted that the police report he prepared regarding this incident did not include anything about finding syringes possessed by Hinkle.

At the conclusion of the hearing, this court took the matter under advisement, with an Order to be entered in due course.

## ANALYSIS

The Seventh Circuit has recently explained that "[a] defendant is entitled to a *Franks* hearing—an evidentiary hearing regarding the veracity of information included in a search warrant application—if he can make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were

made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause. *United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016), *quoting United States v. Mullins*, 803 F.3d 858, 861-62 (7th Cir. 2015). As a result, "*Franks* hearings are 'rarely held' because '[t]hese elements are hard to prove.'" *United States v. Dessart*, 823 F.3d 395, 402 (7th Cir. 2016), *quoting United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.

*Franks*, 438 U.S. at 171.

In this case, Defendant relied for the most part on Hinkle's statements in her Declaration to support his request for a *Franks* hearing. Accordingly, this court concluded that Hinkle's credibility was determinative of whether a *Franks* hearing is required and held a hearing for the purpose of assessing Hinkle's credibility. After hearing Hinkle's testimony, this court concludes that the portions of Hinkle's Declaration that Defendant relied on in support of his request for a *Franks* hearing are simply not credible.[1] This court wants to be clear that it does not believe that Hinkle

---

[1] This court concludes that allowing the Government to present Stringer's testimony at the hearing did not convert the hearing into a full-fledged *Franks* hearing. The purpose of the hearing remained an assessment of the credibility of the statements in Hinkle's Declaration. *Cf. United States v. McMurtrey*, 704 F.3d 502, 509-10 (7th Cir.

was deliberately or intentionally lying during her testimony at the hearing. However, Hinkle obviously was motivated to provide statements and testimony helpful to Defendant, whether because he is her friend or because she feels she is in some danger because of him.[2] This court additionally notes that Hinkle's testimony did not support some of the statements included in the Declaration she signed.

This court concludes that Hinkle's statement in her Declaration that she was told that, if she did not cooperate, her one-year-old daughter would be taken away from her is patently untrue. It is also clear that, although Hinkle was hoping that she would not be arrested for the drugs in her possession that night or because of the outstanding warrant, no promises were actually made to her. Hinkle testified that Stringer did not make any promises about her warrant and this court has no trouble concluding that no promise was actually made about the drugs in her possession either. And, in fact, she was later arrested based upon the outstanding warrant. Thus, her testimony before the judge that no promises were made to her was true.

This court finds completely irrelevant the fact that Stringer took Hinkle to her car, returned her purse to her (with or without syringes in it), and left her there, even

---

2013) (district court made procedural error by allowing the Government to present additional testimony to bolster the search warrant affidavit but did not give the defense a full opportunity to challenge or rebut that evidence). In any case, Defendant was allowed a full opportunity to cross examine Stringer. And, even if the hearing was considered a full *Franks* hearing, the result would be the same. This court concludes that the information provided to the state court judge was accurate so there is no basis for challenging the search warrant issued in this case.

[2] This court notes that Hinkle's demeanor changed markedly after her direct testimony was over and the cross-examination began.

though she did not have a valid driver's license. This happened after the search warrant was issued, and executed, and has no bearing on the issues raised in Defendant's request for a *Franks* hearing.[3]

This court also cannot agree that a *Franks* hearing is warranted because the judge who issued the warrant was not provided information regarding Hinkle's criminal history. In making this argument, Defendant has relied on *United States v. Glover*, 755 F.3d 811 (7th Cir. 2014). In *Glover*, a search warrant was issued based upon an affidavit which included information provided by a confidential informant that he had seen the defendant in possession of handguns at the defendant's house on numerous occasions. *Id.* at 814-15. The police officer requesting the search warrant had corroborated some of the information provided, including driving by the house with the informant. *Id.* at 815. The informant confirmed this was the house where he had seen the defendant with the guns. *Id.* The police officer's affidavit did not include any available information on the informant's credibility. *Id.* In fact, the informant had been an informant for six years, had been affiliated with a gang, had fourteen criminal convictions, including four for crimes committed while he was working as an informant, had used aliases when questioned by police officers on two prior occasions, and had received payment for providing information in the past. *Id.* The police officer brought the informant with

---

[3] Stringer testified that he returned Hinkle to her car and told her that she was not allowed to drive and then left. He testified that he was not going to drive her back to Indiana. This court notes that this is the same procedure followed by the United States Marshal's Service.

him when he appeared before the state court judge, but there was no record of any testimony by the informant. *Id.* The Seventh Circuit concluded that "[t]he complete omission of information regarding [the informant's] credibility is insurmountable, and it undermines the deference we would otherwise give the decision of the magistrate to issue the search warrant." *Id.* at 816. After a lengthy analysis, the Seventh Circuit determined that a *Franks* hearing was necessary and remanded the case for a *Franks* hearing. *Id.* at 821.

The Government insists that the Seventh Circuit's decision in *Hancock* is more instructive. In *Hancock*, the court determined that a *Franks* hearing was not required based upon *Glover*. *Hancock*, 844 F.3d at 709-10. The court concluded that there were not the same type of concerns regarding the informant as there were with the informant in *Glover*. *Id.* at 710. The court stated that, specifically, there was not evidence that the informant was involved in a different, and perhaps rival, gang, that he had attempted to deceive the police, or that he was expecting remuneration for his cooperation. *Id.*

This court concludes that this case is more similar to *Hancock* and is not controlled by *Glover*. As the Government has pointed out, Hinkle appeared before the state court judge and gave testimony, unlike the situation in *Glover*. Also, although Hinkle has an extensive criminal history due to her history of drug addiction and theft crimes, her history does not compare with the history of the informant in *Glover,* which included committing crimes while working as an informant. In addition, contrary to Hinkle's testimony before this court, she testified before the state court judge that she

had used drugs that night.  She also testified that she had purchased drugs on prior occasions.  This court concludes that the state court had ample information to assess Hinkle's credibility and was not mislead about Hinkle, who was available to answer any questions he had.  Therefore, similar to the situation in *Hancock*, there were not the same types of concerns regarding the informant that were present in *Glover*.

After careful consideration, this court concludes that Defendant has not made a substantial showing that: (1) the testimony provided in support of the warrant contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause.  *See Hancock*, 844 F.3d at 708.  Accordingly, this court concludes that Defendant is not entitled to a *Franks* hearing.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for a *Franks* Hearing (#13) is DENIED.

(2) The Government's Motion to Continue or Cancel Hearing (#21) is MOOT.

(3)  This case remains scheduled for a final pretrial conference on September 11, 2017, at 10:30 a.m. and a jury trial on September 26, 2017 at 9:30 a.m.

ENTERED this 28th day of August, 2017.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE